IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division


HARLEYSVILLE MUTUAL INSURANCE COMPANY,

        Plaintiff,

v.                          Civil Action No. 2:04cv93

RICKY CONNER t/a OLIVER'S GROCERY,
VIRGINIA L. MIZELL, and
STEVEN MIZELL,

        Defendants.


## OPINION AND ORDER


    Plaintiff Harleysville Mutual Insurance Company
(Harleysville) declined to pay claims arising out of a fire and
explosion at Oliver's Grocery in Suffolk, Virginia because the
insurance policies covering the store had expired days before the
fire.  Defendant Ricky Conner, the owner of Oliver's Grocery,
asserts, inter alia, that he is entitled to coverage under the
"Mailbox Rule" because a friend placed the renewal premium
payment in a private mailbox shortly before the end of the post-
expiration grace period.  The payment was never received.

    This matter is now before the Court on the parties' cross-
motions for summary judgment.  For the reasons stated below, the
Court **GRANTS** Harleysville's Motion for Summary Judgment (Docket

No. 10) and **DENIES** Conner's Cross-Motion for Summary Judgment
(Docket No 13).

## I.   Factual and Procedural History[1]

As stated above, Conner is the sole owner and operator of
Oliver's Grocery, a convenience store, snack bar, and catering
business located in Suffolk, Virginia.  Harleysville insured
Conner under a Commercial Auto Policy, a Commercial Package
Policy with commercial property and general liability coverage,
and a Workers Compensation Policy.  The most recent policies
issued to Conner were effective from November 30, 2002 through
November 30, 2003.

Conner had purchased insurance from Harleysville for
approximately 14 years through the J. Walter Hosier & Son
Insurance Agency (the "Hosier Agency").  The Hosier Agency's
office is located approximately one mile from Oliver's Grocery.

In October 2003, Harleysville sent to the Hosier Agency an
Insurance Renewal Package for Conner's three insurance policies.
The Insurance Renewal Package contained a Premium Invoice and

---

[1]Because the Court grants Harleysville's Motion for Summary
Judgment, the Court will state the facts, and the inferences
reasonably drawn from those facts, in the light most favorable to
Conner, Virginia L. Mizell, and Steven Mizell, the nonmoving
parties and defendants in the present case.  See Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Smith
v. Cont'l Cas. Co., 369 F.3d 412, 417 (4th Cir. 2004); Nguyen v.
CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995).

individual Renewal Certificates for each policy.  The Premium Invoice specified a minimum payment of $2,838.00 to renew the three insurance polices for the November 30, 2003 through November 30, 2004 term.  The Premium Invoice further specified that the premium payment must be received by Harleysville on or before November 30, 2003.

In past years, the Hosier Agency had paid the premium required by Harleysville and then billed Conner for the funds advanced.  This arrangement is known as "agency billed."  When the Hosier Agency received the 2003-04 invoices from Harleysville, however, it did not follow this procedure.  The Hosier Agency instead treated Conner as a "direct billed" client, which means that Conner was responsible for paying Harleysville directly.

On November 12, 2003, Kent Spain, a licensed insurance agent and the owner of the Hosier Agency, mailed the Insurance Renewal Package to Conner at Oliver's Grocery.  Although Conner received the Insurance Renewal Package mailed by Spain, he did not send any payment or otherwise respond either to Harleysville or to the Hosier Agency by the November 30, 2003 due date.

On December 8, 2003, Harleysville mailed to both Conner and the Hosier Agency a Notice of Policy Expiration for each of the three insurance policies.  The expiration notices informed Conner that his coverage under the three policies expired on November 30, 2003 at 12:01 a.m. Eastern Standard Time and provided Conner with an extended due date of December 23, 2003 at 12:01 a.m. for

payment of his premium.  The expiration notices stated, in relevant part:

> WE HAVE NOT RECEIVED YOUR PREMIUM PAYMENT.  COVERAGE
> EXPIRED ON THE DATE STATED ABOVE.  CONTINUOUS
> PROTECTION IS POSSIBLE IF PAST DUE AMOUNT IS RECEIVED
> BY THE COMPANY/AGENT BEFORE THE EXTENDED DUE DATE OF
> 12-23-03 12.01 AM STANDARD TIME[.]

The expiration notices further provided:

> Please make your check or money order payable to
> HARLEYSVILLE INSURANCE and forward payment in the
> enclosed envelope to the PROCESSING CENTER AT 355 MAPLE
> AVENUE, HARLEYSVILLE, PA 19441.  Include your policy
> number on the face of the check.  MAIL IT TODAY TO KEEP
> YOUR VALUABLE PROTECTION IN FORCE.  If your payment has
> already been forwarded, it will be acknowledged.  THANK
> YOU FOR YOU PAYMENT!

Although Conner received an envelope from the Hosier Agency that contained the expiration notices, he did not open the envelope.  (Conner Statement 65.)  He kept the unopened envelope on his office desk at Oliver's Grocery and used it as a "scratch pad."  (Conner Statement 65; Conner Dep. 28-31.)

At approximately 11:00 a.m. on Friday, December 19, 2003, a grease fire occurred in the cooking area of Oliver's Grocery, resulting in property damage to the business premises.  Later that same day, at approximately 3:00 p.m., Conner spoke on the phone with Barbara Brandon, a licensed insurance agent employed by the Hosier Agency.[2]  Brandon served as the customer representative on Conner's account.  Brandon informed Conner that

---

[2]There is some discrepancy in the record as to whether this phone conversation occurred on December 19, 2003, the day of the fire, or on December 18, 2003, the day prior to the fire. Resolution of this discrepancy in the evidence is not relevant to the Court's determination of the pertinent issues in this case.

the renewal premium for the three insurance policies was overdue
and unpaid.  Brandon urged Conner to pay his premium right away
because it was due on December 23.

Although Brandon was aware that Conner could deliver his
premium payment to the Hosier Agency in person, she did not
suggest that Conner do so.  At the time, Conner was in the midst
of a divorce.  The sister of Conner's estranged wife worked as an
office manager at the Hosier Agency.  Brandon thought that an
"awkward" situation would arise if Conner came to the office and
encountered his sister-in-law.  (Brandon Dep. 26-27.)

After speaking with Brandon, Conner telephoned Bonnie S.
Alford, who volunteered as Conner's bookkeeper for the grocery
store.  As part of her volunteer duties, Mrs. Alford handled
Conner's business correspondence, paid his bills and insurance
premiums, prepared his taxes, and performed other miscellaneous
bookkeeping tasks.  As of December 19, 2003, Mrs. Alford had been
hospitalized for an extended period of time due to a serious
illness.  Mrs. Alford nevertheless maintained Conner's business
records from the hospital.

Conner informed Mrs. Alford of his conversation with Brandon
and instructed Mrs. Alford to write a check payable to the Hosier
Agency for the premium amount.  Conner further instructed Mrs.
Alford to send the premium check directly to Harleysville.  Mrs.
Alford wrote the check and addressed an envelope per Conner's
instructions.  Mrs. Alford placed the check in the envelope and
gave it to her husband, Donnie Alford, who was to deliver the

check to Conner at the grocery store.

Donnie Alford arrived at Oliver's Grocery at approximately 4:00 p.m. on December 19.  Conner was not available, but he had left the Harleysville payment invoice and the pre-addressed return envelope on his office desk for Donnie Alford to retrieve. The return envelope was addressed to Harleysville's Processing Center.  Donnie Alford placed the premium check and invoice in the pre-addressed envelope, sealed the envelope, and affixed a stamp to the outside of the envelope.  Donnie Alford then placed the envelope in a private mailbox located on the street curb in front of Oliver's Grocery.  Before departing, he raised the "flag" on the mailbox to indicate that the mailbox contained mail that was ready for pick-up.[3]

Despite Donnie Alford's efforts, neither Harleysville nor the Hosier Agency ever received Conner's premium check.  Indeed, the check has never been negotiated.

Conner likely was unavailable to meet with Donnie Alford because he was cleaning up the store after the morning fire.  He was assisted in this effort by defendants Virginia L. Mizell and Steven Mizell.  At approximately 5:00 p.m. that same day, a propane gas tank exploded, further damaging the premises.  Conner

---

[3]There is some discrepancy in the record whether Donnie Alford mailed the payment invoice and premium check in the pre-printed envelope provided by Harleysville or in the envelope that Mrs. Alford addressed to Harleysville while she was in the hospital.  In any event, for purposes of deciding the cross-motions for summary judgment, the Court will presume that the premium check was placed in an envelope with appropriate postage and properly addressed to Harleysville's Processing Center.

and the Mizells were injured by the explosion.

Conner presented claims to Harleysville for damage to the grocery store premises and for the interruption of business that resulted from the grease fire and explosion.  Conner also notified Harleysville that the Mizells intended to assert personal injury claims against him.  He tendered the defense of these claims to Harleysville and demanded that Harleysville indemnify him.  Harleysville declined to provide coverage, asserting that Conner's three policies had not been renewed for the 2003-04 term.

Harleysville filed the present action in this Court seeking, among other things, a declaration that the three insurance policies issued to Conner were not in force and effect at the time of the fire and explosion and that Harleysville does not have a duty either to defend or to indemnify Conner pursuant to those policies.  (Docket No. 1.)  Conner filed a counterclaim asking this Court, among other things, to declare that the insurance policies were in force at the time of the fire and explosion and that Harleysville must provide coverage.  (Docket No. 4.)

## II.  Principles of Summary Judgment

The standards courts apply in their consideration of motions for summary judgment are well-established.  Summary judgment is appropriate only when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  Fed. R. Civ. P. 56(c); see also Hunt v.
Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett,
477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 247 (1986); Seabulk Offshore, Ltd. v. Am. Home
Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004); Walton v.
Greenbrier Ford, Inc., 370 F.3d 446, 449 (4th Cir. 2004).

An otherwise proper summary judgment motion will not be
defeated by a mere factual dispute between the parties unless the
dispute concerns a "genuine issue of material fact."  Anderson,
477 U.S. at 247-48; Bouchat v. Baltimore Ravens Football Club,
Inc., 346 F.3d 514, 519 (4th Cir. 2003).  A "material fact" is a
fact that might affect the outcome of a party's case.  See
Anderson, 477 U.S. at 248; JKC Holding Co. v. Wash. Sports
Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001); Commerce
Funding Corp. v. Worldwide Sec. Servs. Corp., 249 F.3d 204, 209
(4th Cir. 2001).  Whether a fact is considered to be "material"
is determined by the substantive law, and "[o]nly disputes over
facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment."  Anderson, 477 U.S. at 248; see also Hooven-Lewis v.
Caldera, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue
concerning a "material" fact arises when the evidence is
sufficient to allow a reasonable jury to return a verdict in the

nonmoving party's favor.  <u>Anderson</u>, 477 U.S. at 248; <u>Commerce Funding Corp.</u>, 249 F.3d at 209-10; <u>Brinkley v. Harbour Recreation Club</u>, 180 F.3d 598, 614 (4th Cir. 1999).

Summary judgment shall be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322; <u>see also</u> <u>Hooven-Lewis</u>, 249 F.3d at 265; <u>Johnson v. Pearson</u>, 316 F. Supp. 2d 307, 313 (E.D. Va. 2004).  The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law.  <u>Honor v. Booz-Allen & Hamilton, Inc.</u>, 383 F.3d 180, 185 (4th Cir. 2004); <u>McLean v. Patten Cmtys., Inc.</u>, 332 F.3d 714, 718 (4th Cir. 2003); <u>see</u> <u>Celotex Corp.</u>, 477 U.S. at 322-25.  When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Honor</u>, 383 F.3d at 185; <u>McLean</u>, 332 F.3d at 718-19.

In meeting this burden, the nonmoving party must "go beyond the pleadings" and present affidavits or designate specific facts in depositions, answers to interrogatories, and admissions on file to establish a genuine issue of material fact.  <u>Celotex</u>

9

Corp., 477 U.S. at 324; see also M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1993); Parker v. Westat, Inc., 301 F. Supp. 2d 537, 540 (E.D. Va. 2004). However, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. See Anderson, 477 U.S. at 252; Matsushita, 475 U.S. at 586; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997); Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). The evidence presented must be such that a reasonable jury could find in favor of the nonmoving party. Anderson, 477 U.S. at 252; Retail Servs. Inc. v. Freebies Publ'g, 364 F.3d 535, 542 (4th Cir. 2004); Tao of Sys. Integration, Inc., 330 F. Supp. 2d at 671.

Summary judgment is not a "disfavored procedural shortcut." Celotex Corp., 477 U.S. at 327; Sibley v. Lutheran Hosp. of Md., Inc., 871 F.2d 479, 483 n.9 (4th Cir. 1989); Brown v. Mitchell, 327 F. Supp. 2d 615, 628 (E.D. Va. 2004). Rather, the summary judgment procedure is properly regarded as an "integral part" of the Federal Rules of Civil Procedure, which are designed to obtain a just, expeditious, and inexpensive resolution of every civil matter. Celotex Corp., 477 U.S. at 327; Sibley, 871 F.2d at 483 n.9; Graham v. Pactiv Corp. Benefits Comm., 301 F. Supp.

2d 483, 491-92 (E.D. Va. 2004).


## III.  Analysis

<u>A.  Mailbox Rule</u>


Harleysville argues that the three expiration notices
clearly and unambiguously provide that Harleysville had to
<u>receive</u> Conner's premium payment no later than 12:01 a.m. on
December 23, 2003 in order for the policies to remain in effect.
Conner, by contrast, asserts that Harleysville's expiration
notices are ambiguous.  Although the expiration notices specified
a specific date by which payment must be received, the
exhortation, "MAIL IT TODAY TO KEEP YOUR VALUABLE PROTECTION IN
FORCE," indicated to Conner that he was only required to place
the premium payment in the mail to renew the policies and
maintain his coverage.  Because ambiguities in an insurance
policy are construed against the insurer,[4] Conner asserts that
the "Mailbox Rule" applies and mandates a finding that he timely
renewed the insurance policies on December 19, 2003 when Donnie
Alford placed the premium check in the mail.

_____

[4]If a term in an insurance policy is ambiguous, the Court
must construe that term in favor of coverage.  <u>Gov't Employees
Ins. Co. v. Moore</u>, 266 Va. 155, 165-66, 580 S.E.2d 823, 828-29
(2003); <u>Va. Farm Bureau Mut. Ins. Co. v. Gile</u>, 259 Va. 164, 169,
524 S.E.2d 642, 645 (2000) (Keenan, J.); <u>S.F. (Jane Doe) v. W.
Am. Ins. Co.</u>, 250 Va. 461, 464, 463 S.E.2d 450, 452 (1995); <u>see
Seabulk Offshore, Ltd.</u>, 377 F.3d at 419.

Under Virginia law,[5] an insurance policy is a contract and its terms are to be construed according to the general principles of contract law. Dairyland Ins. Co. v. Douthat, 248 Va. 627, 630, 449 S.E.2d 799, 801 (1994) (Keenan, J.); Allstate Ins. Co. v. Eaton, 248 Va. 426, 431, 448 S.E.2d 652, 655 (1994) (Keenan, J.). It is thus essential to the creation of an insurance contract that there be an offer or proposal by one party and an express or implied acceptance by the other party. Aetna Cas. & Sur. Co. v. Harris, 218 Va. 571, 575, 239 S.E.2d 84, 86 (1977); Boone v. Standard Accident Ins. Co. of Detroit, 192 Va. 672, 678-79, 66 S.E.2d 530, 534 (1951). "A renewal contract of insurance must also have these essentials, such as mutual assent and a new consideration." Harris, 218 Va. at 575, 239 S.E.2d at 86; see also Boone, 192 Va. at 679, 66 S.E.2d at 534. Absent a contrary statute, "a policy provision making the advance payment of the premium a condition for renewal of coverage is both valid and enforceable." Peerless Ins. Co. v. Assocs. Fin. Servs. of Am., Inc., 218 Va. 876, 879, 241 S.E.2d 792, 794 (1978).

The language of an insurance policy is ambiguous if it can be understood in more than one way or if it simultaneously refers to two or more things. Salzi v. Va. Farm Bureau Mut. Ins. Co., 263 Va. 52, 55-56, 556 S.E.2d 758, 760 (2002); S.F. (Jane Doe) v. W. Am. Ins. Co., 250 Va. 461, 464, 463 S.E.2d 450, 452 (1995); Granite State Ins. Co. v. Bottoms, 243 Va. 228, 234, 415 S.E.2d

---

[5]Neither party disputes that Virginia law governs the resolution of the issues in this case.

131, 134 (1992); <u>see</u> <u>Seabulk Offshore, Ltd.</u>, 377 F.3d at 419.
Such an ambiguity, if it exists, must be found on the face of the
policy.  <u>Salzi</u>, 263 Va. at 55, 556 S.E.2d at 760; <u>S.F. (Jane
Doe)</u>, 250 Va. at 464, 463 S.E.2d at 452; <u>Granite State Ins. Co.</u>,
243 Va. at 233, 415 S.E.2d at 134.  In determining whether
disputed terms are ambiguous, the Court must consider those terms
according to their "usual, ordinary, and popular meaning." <u>Video
Zone, Inc. v. KF&F Properties, L.C.</u>, 267 Va. 621, 626, 594 S.E.2d
921, 924 (2004) (Keenan, J.).

The Court finds that the language at issue in the expiration
notices is unambiguous.[6]  The terms of renewal clearly require
<u>receipt</u> of the premium payment by the extended due date in order
to maintain coverage under the policies.  The exhortation to
place the premium payment in the mail "today" served merely to
encourage the insured to act quickly to ensure that Harleysville
received the premium payment by the extended due date.  Nothing
in the language of the expiration notices indicates that mailing
alone is sufficient to renew the insurance policies and maintain

---

[6]When the terms of a contract are clear and unambiguous, the
interpretation of those terms presents a question of law.
<u>Waikoloa Ltd. P'ship v. Arkwright</u>, 268 Va. 40, 46, 597 S.E.2d 49,
53 (2004) (Keenan, J.); <u>Musselman v. The Glass Works, L.L.C.</u>, 260
Va. 342, 346, 533 S.E.2d 919, 921 (2000) (Keenan, J.); <u>Pollard &
Bagby, Inc. v. Pierce Arrow, L.L.C., III</u>, 258 Va. 524, 528, 521
S.E.2d 761, 763 (1999) (Keenan, J.).  Likewise, the determination
whether a contract provision is ambiguous also presents a
question of law, not of fact.  <u>Video Zone, Inc.</u>, 267 Va. at 625,
594 S.E.2d at 923; <u>Pollard & Bagby, Inc.</u>, 258 Va. at 528, 521
S.E.2d at 763; <u>Tuomala v. Regent Univ.</u>, 252 Va. 368, 374, 477
S.E.2d 501, 505 (1996) (Keenan, J.).

coverage.  Because the expiration notices unambiguously require
that Harleysville <u>receive</u> payment on or before 12:01 a.m. on
December 23, 2003, Conner cannot rely upon the "Mailbox Rule" to
effect a constructive payment of the renewal premium.  If the
language of an insurance policy is clear and unambiguous and not
in violation of the law, the Court may not resort to rules of
construction, but must instead give the language its plain,
ordinary, and customary meaning and enforce the terms of the
policy as written.  <u>See</u> <u>Nat'l Hous. Bldg. Corp. v. Acordia of Va.</u>
<u>Ins. Agency, Inc.</u>, 267 Va. 247, 251, 591 S.E.2d 88, 90-91 (2004);
<u>Gov't Employees Ins. Co. v. Moore</u>, 266 Va. 155, 164, 580 S.E.2d
823, 828 (2003); <u>The P'ship Umbrella, Inc. v. Fed. Ins. Co.</u>, 260
Va. 123, 133, 530 S.E.2d 154, 160 (2000); <u>see</u> <u>also</u> <u>Seabulk</u>
<u>Offshore, Ltd.</u>, 377 F.3d at 419.

The inapplicability of the "Mailbox Rule" to this case is
further established by the Virginia Supreme Court's decision in
<u>Nan Ya Plastics Corp. U.S.A. v. DeSantis</u>, 237 Va. 255, 377 S.E.2d
388 (1989).  The defendant in that case, a foreign corporation,
argued that a contract between the parties was formed in Texas
when it placed its letter of acceptance in the mail in that
state.  <u>Id.</u> at 259, 377 S.E.2d at 391.  However, the plaintiff
employee, a resident of the Commonwealth of Virginia, had
"expressly conditioned his acceptance" of the defendant foreign
corporation's offer of employment "upon his <u>receipt</u> of assurances
that a five-year guarantee would be a part of his contract."  <u>Id.</u>
at 260, 377 S.E.2d at 392-93.  (Emphasis added).  The Court ruled

that the contract was formed in Virginia when the plaintiff
employee received the defendant foreign corporation's letter of
acceptance.  Id. at 260-61, 377 S.E.2d at 391-92.  In explaining
its ruling, the Virginia Supreme Court stated:

> Under these circumstances, defendant's "mailbox rule"
> argument is not pertinent because the plaintiff
> required the letter of acceptance actually to be
> received as a condition to formation of the contract.
> Thus, the contract was not formed until the letter was
> received.

Id. at 261, 377 S.E.2d at 392 (citing 1 Williston on Contracts §
88, at 283 (3d ed. 1957)).

The New Jersey Superior Court's decision in Okosa v. Hall,
718 A.2d 1223 (N.J. Super. Ct. App. Div. 1998), is not persuasive
authority to the contrary.  The plaintiffs in that case, who were
insured under an automobile insurance policy, failed to pay a
quarterly premium payment by the due date.  Defendant insurance
carrier sent the plaintiffs a letter informing them that their
insurance policy would be automatically cancelled if they did not
pay the installment premium payment by the extended due date.
Id. at 1223.  The cancellation letter stated, in pertinent part:

> If we receive payment on or before the cancellation
> date, we will continue your policy with no interruption
> in the protection it affords.  If you've recently
> mailed your payment, please disregard this notice.

Id. at 1223-24.  (Emphasis added).  The plaintiffs posted their
installment premium payment via certified mail one day prior to
the extended due date, and were involved in an automobile
accident the following day.  Id. at 1224.

At issue was whether the "Mailbox Rule" applied so that the

plaintiffs' payment was timely made.  The New Jersey Superior
Court ruled that the "Mailbox Rule" controlled the outcome of the
case because the defendant insurance carrier authorized the use
of the mails as a means to send the premium payment and the
carrier thus "constituted the postal authorities as its agent."
Id. at 1225.

The language of the cancellation letter in Okosa is clearly
distinguishable from the language in the expiration notices that
Conner received.  In Okosa, the defendant insurance carrier
instructed the plaintiffs to "please disregard this notice" if
the plaintiffs had "recently mailed" the installment payment.
Id. at 1223-24.  Unlike the instant case, receipt of payment was
thus not a requirement of continued coverage.  All that was
required of the plaintiffs in Okosa was that they place their
premium payment in the mail prior to the extended due date.

Not surprisingly, the New Jersey Superior Court, like the
Virginia Supreme Court, recognized that the "Mailbox Rule" does
not apply when receipt is required.  Id. at 1224.  Because
Harleysville's expiration notices clearly mandated receipt of
Conner's premium payment to trigger coverage for the 2003-04
term, Conner's arguments under the "Mailbox Rule" must fail.


B.  Mailing Presumption


Under Virginia law, the mailing of properly addressed and
stamped correspondence raises a presumption of receipt by the

16

addressee.  Washington v. Anderson, 236 Va. 316, 322, 373 S.E.2d
712, 715 (1988); Manassas Park Dev. Co. v. Offutt, 203 Va. 382,
385, 124 S.E.2d 29, 31 (1962); Hartford Fire Ins. Co. v. Mut.
Sav. & Loan Co., 193 Va. 269, 273, 68 S.E.2d 541, 544 (1952).  An
addressee's denial of receipt raises an issue of fact to be
determined by the jury.  Manassas Park Dev. Co., 203 Va. at 385,
124 S.E.2d at 31; Hartford Fire Ins. Co., 193 Va. at 273, 68
S.E.2d at 544.

        Based on this authority, Conner argues that Harleysville is
presumed to have received the premium mailed on December 19, and
that Harleysville's denial of receipt requires that this case be
submitted to a jury for decision.  However, the addressee's
receipt of the correspondence is the "only fact" that is
presumed.  Davis v. Am. Interinsurance Exch., 228 Va. 1, 4, 319
S.E.2d 723, 724 (1984).  "Absent proof of the normal course of
the mails and the time usually required to convey a letter from
the place of dispatch to the place of delivery, the law indulges
no presumption as to the time it was received."  Id. at 4-5, 319
S.E.2d at 724-25.

        Conner has not presented any evidence of the "normal course
of the mails" and the time that it would normally take to send
correspondence via regular mail and postage from the mailbox
outside his grocery store in Suffolk to Harleysville's address in
Pennsylvania.  The only evidence in the record suggests that mail
sent from private mailboxes near Oliver's Grocery occasionally
becomes lost.  On at least two occasions, mail sent from the

grocery store's mailbox never reached its intended destination, requiring Mrs. Alford to resubmit payment for a "dumpster" bill and a utility bill.  (Bonnie Alford Dep. 18-19.)  Further, letters sent from a nearby private mailbox on December 19, 2003 were "lost in the mail" for approximately three weeks.  (Conner Statement 69, 75-76; Conner Dep. 71-72.)

Accordingly, even if the Court were to presume that Harleysville received Conner's premium check (but decided not to negotiate it), there is simply no evidence concerning <u>when</u> that check was received.  Because Conner has not presented any evidence that Harleysville received his check prior to the December 23, 2003 deadline, his argument must fail.

## C.  Equitable Estoppel

Conner next argues that Harleysville should be equitably estopped from denying him coverage under the three insurance policies because he merely followed Brandon's instructions to place the premium payment in the mail.  Conner asserts that Brandon deliberately concealed a material fact when she failed to inform him that he could deliver his premium check directly to the office of the Hosier Agency.  Conner contends that he was unaware that this option existed.[7]

---

[7]Conner's claim that he was not aware that he could deliver his premium payment directly to the office of the Hosier Agency strains credulity.  Conner was aware that some of his premium payments had previously been delivered directly to the Hosier

"The doctrine of estoppel applies only when the insured can prove he justifiably relied on the insurer's conduct and was thus misled by the [insurer's] behavior into believing that the policy was still in force." Harris v. Criterion Ins. Co., 222 Va. 496, 502, 281 S.E.2d 878, 881 (1981); see State Farm Mut. Auto. Ins. Co. v. Pederson, 185 Va. 941, 953-54, 41 S.E.2d 64, 69 (1947). The doctrine of equitable estoppel is unavailable unless the party invoking it can show that he or she acted in reasonable reliance upon the conduct or statement of the party that he or she seeks to bind. Tuomala v. Regent Univ., 252 Va. 368, 375-76, 477 S.E.2d 501, 506 (1996) (Keenan, J.); Khoury v. Cmty. Mem'l Hosp., Inc., 203 Va. 236, 243, 123 S.E.2d 533, 538 (1962). Unwarranted reliance by the insured is insufficient to invoke the application of estoppel. Harris, 222 Va. at 502, 281 S.E.2d at 881.

Conner failed to produce evidence showing that he reasonably relied on Brandon's instructions and her alleged concealment to his detriment. The expiration notices explicitly informed Conner that his premium payment had to be received by either Harleysville or its agent prior to the expiration of the extended deadline. When asked why he did not deliver the premium check directly to the Hosier Agency's office, Conner stated under oath that he relied on his bookkeeper, Mrs. Alford, to select the appropriate method of delivery. (Conner Statement 74.) Conner

---

Agency.  (Conner Statement 23.)

did not instruct Mrs. Alford as to the manner of delivery, and he did not instruct her to expedite the delivery.  Further, Conner stated that at the time, he was not concerned that Harleysville might not receive the premium payment by the extended deadline.  Conner also acknowledged that Brandon advised him that he had to "get [his premium payment] in" to Harleysville no later than "the 23rd" of December.  (Conner Statement 64, Conner Dep. 50.)  This is hardly the "clear, precise, and unequivocal evidence" necessary to establish equitable estoppel.  See Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust, 243 Va. 53, 59, 413 S.E.2d 599, 603 (1992); Cowan v. Psychiatric Assocs., 239 Va. 59, 63, 387 S.E.2d 747, 749 (1990); Dominick v. Vassar, 235 Va. 295, 298, 367 S.E.2d 487, 489 (1988).


D.  Course of Dealing


     Conner next argues that Harleysville's past failure to cancel policies when premium payments were late establishes a course of dealing between the parties.  Conner asserts that this course of dealing should estop Harleysville from cancelling his coverage in this instance.  Alternatively, Conner contends that the course of dealing establishes that Harleysville has waived strict compliance with its receipt requirement.

     A course of dealing by contracting parties may evince a "mutual intent" to modify a contract's terms.  Gov't Employees Ins. Co. v. Hall, 260 Va. 349, 356, 533 S.E.2d 615, 618 (2000);

Cardinal Dev. Co. v. Stanley Constr. Co., 255 Va. 300, 305, 497 S.E.2d 847, 851 (1998); Stanley's Cafeteria, Inc. v. Abramson, 226 Va. 68, 73, 306 S.E.2d 870, 873 (1983).  The circumstances surrounding the contracting parties' conduct "must be sufficient to support a finding of a 'mutual intention' that the modification be effective."  Hall, 260 Va. at 356, 533 S.E.2d at 618; Cardinal Dev. Co., 255 Va. at 305, 497 S.E.2d at 851; Stanley's Cafeteria, Inc., 226 Va. at 73, 306 S.E.2d at 873. Such a "mutual intention" must be shown by "clear, unequivocal and convincing evidence, direct or implied."  Hall, 260 Va. at 356, 533 S.E.2d at 618 (quoting Warren v. Goodrich, 133 Va. 366, 389, 112 S.E. 687, 694 (1922)); see also Cardinal Dev. Co., 255 Va. at 305, 497 S.E.2d at 851; Stanley's Cafeteria, Inc., 226 Va. at 73, 306 S.E.2d at 873.  Further, when one of the parties to the contract claims that the other party has surrendered a right that the contract guarantees, the party asserting the modification must prove either a passage of valuable consideration, estoppel in pais, or a waiver of the right. Cardinal Dev. Co., 255 Va. at 305, 497 S.E.2d at 851; Stanley's Cafeteria, Inc., 226 Va. at 73, 306 S.E.2d at 873.

Conner's claim that the parties had a course of dealing fails because he cannot establish a "mutual intention" between himself and Harleysville to modify the terms of the renewal contract to accept late payments in lieu of cancellation of the insurance policies.  The few late payments that Conner did make were tendered to the Hosier Agency rather than to Harleysville.

Because Conner was an "agency billed" client until November 2003, the Hosier Agency had already paid the premium owed to Harleysville.  The money that Conner paid was deposited into the Hosier Agency's accounts.  Moreover, the record establishes that Conner was late only when making his quarterly premium payments.[8] There is no proof that Conner was previously tardy in paying his renewal premiums.  The premium payments at issue in the present case were of the latter variety and, unlike quarterly payments, were necessary to trigger another one year term of coverage.

## E.  Unclean Hands

Finally, Conner argues that Harleysville should be equitably estopped from denying him coverage under the insurance policies because it has "unclean hands."  To address this contention, the Court must review the history of claims made under Conner's Harleysville insurance policies prior to December 19, 2003.

In September 2003, approximately three months prior to the fire and explosion, Conner made a claim on his Commercial Package Policy in the amount of $2,186.83 for food spoilage that occurred

---

[8]The evidence of late quarterly payments came from the deposition testimony of Barbara Brandon of the Hosier Agency. (Brandon Dep. 16.)  Neither Conner nor Mrs. Alford could recall ever making any late premium payments to Harleysville or to the Hosier Agency.  (Conner Statement 26-27; Conner Dep. 18; Alford Dep. 18.)  It is hardly persuasive for Conner to claim a "mutual intention" between the parties to accept late premium payments when he cannot recall ever making such a payment.

in the aftermath of Hurricane Isabel.  That same month, Conner
also made a claim on his Commercial Package Policy in the amount
of $3,500.00 for a burglary that occurred at Oliver's Grocery.
Harleysville did not approve or pay either claim until January
2004 -- more than one month after Conner's insurance policies
expired.

In addition to the unprocessed claims, Harleysville owed
Conner a $726.00 credit at the time of the fire and explosion.
This credit resulted from an overpayment that occurred after
Conner had deleted three vehicles from his Commercial Auto
Policy.

On January 6, 2004, well after the post-expiration grace
period ended, Conner's estranged wife asked the Hosier Agency to
apply the $726.00 as a down payment toward the $2,838.00 owed for
the renewal premium.  On January 7, 2004, the Hosier Agency sent
Conner a letter informing him that Harleysville declined the
request because "Harleysville does not accept partial payments
for renewal down payments."  Enclosed with the letter was a check
in the amount of $726.00.

The claims and overpayment totaled $6,412.83.  Conner
invites this Court to rule that Harleysville has unclean hands
because it did not on its own apply this amount to pay Conner's
renewal premium of $2,838.00.  Such a ruling would effectively
require insurers to establish clairvoyance departments to divine
whether their customers secretly wish to renew policies, switch
coverage to competing insurers, or go bare.  While this would be

a boon to tarot card readers and former members of the "Psychic Friends Network," the Court declines to take this step.

The equitable doctrine of "unclean hands" derives from the familiar maxim that "[h]e who asks equity must do equity, and he who comes into equity must come with clean hands." Firebaugh v. Hanback, 247 Va. 519, 526, 443 S.E.2d 134, 138 (1994) (quoting Walker v. Henderson, 151 Va. 913, 927-28, 145 S.E. 311, 315 (1928)). Under the "unclean hands" doctrine, a party is not entitled to relief because of that party's own inequitable conduct. Brown v. Kittle, 225 Va. 451, 456, 303 S.E.2d 864, 867 (1983). The application of this doctrine depends on the facts of each particular case. Wiglesworth v. Taylor, 239 Va. 603, 608, 391 S.E.2d 299, 303 (1990). The "unclean hands" doctrine "only applies to the particular transaction under consideration . . . . The wrong must have been done to the defendant himself and must have been in regard to the matter in litigation." Perel v. Brannan, 267 Va. 691, 706, 594 S.E.2d 899, 908 (2004) (quoting Richards v. Musselman, 221 Va. 181, 187, 267 S.E.2d 164, 168 (1980)).

Conner's claim of "unclean hands" must fail because there is no evidence that Harleysville engaged in any inequitable conduct by refusing to pay the renewal premiums through a credit. Although Conner made claims arising from property damage and a burglary in September 2003, the claims were not approved until January 2004. Moreover, Conner did not request that Harleysville apply any of the money due under the pending claims toward his

premium payment until <u>after</u> the extended deadline for renewal had lapsed.  Harleysville could not apply the prospective claim awards to pay the renewal premium without Conner's specific instructions to do so.  Had Harleysville applied the claim awards on its own, it could have become liable to Conner for wrongful conversion or misappropriation of funds.


### IV.  Conclusion


For the reasons stated above, Harleysville's Motion for Summary Judgment is **GRANTED.**  Conner's Cross-Motion for Summary Judgment is **DENIED.**

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all counsel of record.


**IT IS SO ORDERED.**


```
_____/s/_____
Walter D. Kelley, Jr.
UNITED STATES DISTRICT JUDGE
```

Norfolk, Virginia
September 30, 2005